CHARLES C. EGERTON, *et al. vs.* THOMAS B. REILLY AND WIFE.—December, 1829.

A complainant filed an exception to an answer, and the County Court without deciding upon it, referred the case to the Auditor, who stated an account, rejecting a credit claimed by the defendant's answer; to this, exceptions were also filed, and over-ruled, and the account ratified. Upon appeal, *it was held,* that the County Court had acted prematurely, that after the exceptions to the answer had been decided on, the case should have

been set down for argument on bill and answer, or a replication to the answer put in, and an opportunity afforded to the respondent, to make out his defence, by proof.

APPEAL from an order of *Saint Mary's* County Court, sitting as a Court of Chancery, confirming the report of the auditor of that court.   The bill filed on the 9th of August, 1824, by the complainants, (now appellees,) stated, that *H. G. S. Key*, one of the defendants, was indebted to the complainant *Rebecca Reilly* before her marriage in the sum of $266.65; that the defendant, *Charles C. Egerton*, was in the habit of supplying her with such articles as she required (he, the said *Egerton*, being a merchant, residing in said county,) and that she was likewise in the habit, occasionally, of making small purchases of the Messrs. *Shemwells*, likewise merchants of the said county.   That for the purpose of securing them, and giving the said *Rebecca*, a further credit with the said *Egerton*, she agreed to give him a control over the debt, due her as aforesaid from the said *Key*, with the express understanding that the sums then due the said *Egerton* and *Shemwells* should be paid, by said *Egerton*, out of said debt, and the balance held subject to the order of said *Rebecca*, in pursuance of said understanding, the said *Rebecca* gave to the said *Egerton* an order, dated the 29th of April, 1822, on said *Key* for said debt, which was accepted, he, the said *Key*, being aware of the said understanding.   That *Key* afterwards gave his single bill to *Egerton* for the amount, who thereupon brought suit and recovered judgment.   That *Egerton* has paid no part of the debts, which according to the foregoing understanding he was to have paid out of the money due from *Key*, nor did he give the credit to the said *Rebecca* which he stipulated to do ; but they charge, that combining with *Josiah* and *Philip Turner*, also defendants, and intending to defraud the complainants of said debt, and convert the same to his use, and the use of the said *Josiah* and *Philip*, he had assigned to them the whole of said judgment, when in fact the complainants who have intermarried, are the equitable owners of all that may be due thereon, after satisfying the purposes for which it was placed in the hands of *Egerton*, which it is much more than sufficient to do.   *Prayer*, that an

account may be stated between the said *Egerton*, and complainants, and that the aforesaid judgment may be decreed them, and in the meantime that an injunction may issue against all the parties restraining the payment of the money. Injunctions and subpœnas issued.

The answer of *Egerton* admits that *Rebecca*, before her intermarriage was in the habit of getting family supplies from the firm of *Egerton and Pike*, of which he was a member, for her own *use*, and also, as he alleges, for her mother's family, and also, as he believes, from the *Messrs. Shemwells*, and that she gave the draft on *H. G. S. Key*, as stated, for which he gave his single bill. That this single bill was put in suit, and before judgment was obtained, he assigned the same to *Josiah and Philip Turner*; but he alleges, that the assignment was made for a valuable consideration, being on account of a heavy amount due from him to them; he states, that at the judgment court, he was asked by *Key* if he wanted the money, but upon telling him that he had assigned the claim to the *Turners*, he *Key*, applied to *Josiah* who was present, and an arrangement for a settlement was made between them; that he, this defendant, still owes the *Turners* a considerable balance. He admits, that at the time the draft was given, it was understood, that the dealings of said *Rebecca*, with *Egerton* and *Pike*, were to be paid out of it, and avers that several other claims, amongst others, one due from one *F. P. Key*, were also to be paid, as well as the claim against her individually, which deducted from the amount of the said draft, would only leave a balance of $38.91, which is all he justly owes them. He denies, that at the time the note of *Key* was executed, there was any understanding, that he should hold the balance which might remain of the same, for the use of complainants, but states the understanding to have been, that he defendant, was to be individually answerable for any such balance. He denies any agreement to settle *Shemwells* claim, and all fraud, &c.

The answers of *Josiah* and *Philip Turner* state, that *Key's* note was assigned to them, by *Egerton* whilst in *suit*. That the assignment was made for a valuable consideration, and that a

heavy balance is still due them from *Egerton.* They deny all knowledge of the alleged understanding between the complainants, or either of them and *Egerton*, and of their dealing, except having heard *Egerton* say, he might owe a small balance on the transaction. The defendant, *Josiah Turner*, states, that at the judgment court, *Key* acknowledged the justice of the claim, and after judgment asked for indulgence, which was granted on certain terms then agreed upon.

The answer of *Key*, admits the debt, and denying all fraud, &c. says he is ready to pay the money as the court may direct.

At May term, 1825, the complainants filed exceptions to the answer of *Egerton*, upon the ground that the attempt to charge them with a debt due from *F. P. Key* was made without any memorandum or note signed by either of them, or any other person, by them authorized to that effect.

At August term, 1825, the court referred the case to the auditor, with directions to state an account, which was accordingly stated, and reported to the following March term. At that term, the defendants excepted to the said report of the auditor, upon the ground, that he had not given them credit for the amount of the claim spoken of in the answer of *Egerton*, as due him from *F. P. Key*, but the court over-ruled the said exception, and ordered that said report be ratified and confirmed.

From which order, the defendants appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE and DORSEY, J.

*A. C. Magruder* for the appellants.

This case was not in a situation to be sent to the auditor. The complainants had not put in a general replication, nor set it down upon bill and answer. If it was intended to put in a replication, an opportunity ought to have been given to the defendants to establish their case by proof. If it was to be considered as being before the court, upon bill and answer, then the matters set forth in the answers, being admitted to be true, the complainants clearly had no case.

No counsel appeared for the appellees.

EARLE, J. delivered the opinion of the Court.

However the decision in this case in itself may be viewed, it was certainly premature, and in this the equity jurisdiction below, committed an error.

Before the exceptions to one of the answers was disposed of, the court passed an order, directing the auditor to state an account of the amount of the debt due to the complainants, after deducting the debts due from the complainants to the defendant, *Egerton*, including the item for postage, according to the terms of the order filed in the cause; and subsequently ratified and confirmed the auditor's report and statement thereon, excepted to by the defendants.

The exceptions to the answer being decided on, the case should have been set down for argument on bill and answer, or a replication to the answers put in, and an opportunity afforded to the respondents to make out their defence by proof.

The real object of the order of the 29th April, 1822, and the transaction growing out of it, might then have been understood, and if *Egerton's* right to apply a part of it to the discharge of *Franeis P. Key's* account had not been substantiated by evidence, the auditor's report rejecting it would have been free of exception, and the case of *Egerton* so far properly settled against him.

An opportunity to the *Turners* would also have been offered to shew, that their connexion with the transaction of the assignment of *Key's* single bill, was fair and *bona fide,* and that the same was made to them for a valuable consideration, and without notice of any trust and confidence between *Rebecca Key* and *Egerton,* in relation to the debt due from *H. G. S. Key* to her.

We reverse the order confirming the auditor's report, that the case may still take this course in *Saint Mary's* County Court, and what appertains to equity and justice may yet be done between these two parties in that tribunal.

Order reversed; and adjudged, ordered and decreed by the Court of Appeals, that the order of *Saint Mary's* County Court, as a Court of Equity, confirming the report of the auditor,

be, and the same is hereby reversed and annulled, and that the said court proceed in the cause, so that equity and justice may be done to the parties. Further adjudged, that the appellees pay the appellants their costs on this appeal.